Ilia Zavialov, pro se
12815 SE Rivercrest Drive
Vancouver, Washington 98683
Property79@yahoo.com
(360)258-1757



14-CV-05700-CMP

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT VANCOUVER, WASHINGTON

ILIA ZAVIALOV,

Plaintiff,

v.

ANASTASIA POPOVA;
STEPHEN BILLS;
PHILLPOTT, BILLS, STOLL & MEEKS, LLP;
SORRELL TROPE;
THOMAS PAINE DUNLAP;
AARON ABROMOVITZ;
JOHN ELLIS;
TROPE AND TROPE, LLP;
ROBERT E. WILLETT; MAREN E. NELSON;
EDMUND G. BROWN, in his official capacity
as Governor of the State of California;
DAVID S. WESLEY; SHERRI R. CARTER, in her official capacity
as the Executive Officer/Clerk of the Los Angeles County Superior Court;
DAVID E. BLUMENTHAL, CPA;
GURSEY, SCHNEIDER & CO. LLC;
ANDREW CHRISTIAN SCHMITT;
JEFFREY WILENS; LOS ANGELES COUNTY SUPERIOR COURT;
STATE OF CALIFORNIA,

Defendants.

_____/

Case No.   C14- 5700 RBL

**COMPLAINT FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS, DEFAMATION, RICO VIOLATIONS PURSUANT TO 18 U.S.C. §1962(b), (c) AND VIOLATIONS OF CIVIL RIGHTS PURSUANT TO 42 U.S.C. §1983 AND INJUNCTIVE RELIEF**

## JURY TRIAL DEMANDED

## COMPLAINT

COMES NOW, Ilia Zavialov, an individual who is a residence of Vancouver, Washington, and appearing pro-se, alleges as follows:

## INTRODUCTION

1. This action arises due to Intentional Infliction of Emotional Distress, Defamation, RICO Violations and Civil Rights Violations and seeking Injunctive Relief as to actions that have taken place by the Defendants as set forth below:

## THE PARTIES

2. This action is brought by Ilia Zavialov ("Ilia), who is the Respondent in a divorce action, listed as follows, Superior Court of the State of California, For the County of Los Angeles, California in the matter of *Anastasia Popova v. Ilia Zavialov*, Case No. BD 588375.

3. Ilia is a resident of Vancouver, Washington.

4. Trope and Trope, LLP ("Trope and Trope") are the attorneys representing Anastasia Popova ("Anastasia"), who is the Petitioner in the divorce action, listed as follows, Superior Court of the State of California, For the County of Los Angeles, California in the matter of *Anastasia Popova v. Ilia Zavialov*, Case No. BD 588375.

5. Anastasia is a resident of Los Angeles, California.

6. Defendant, Sorrell Trope ("Mr. Trope"), Defendant, John A. Ellis ("Mr. Ellis") and Defendant, Thomas Paine Dunlap ("Mr. Dunlap") are each a partner in the law firm of Defendant, Trope and Trope, LLP ("Trope and Trope"), located in Los Angeles, California who

are the attorneys representing Anastasia in the divorce action, listed as follows, Superior Court of the State of California, For the County of Los Angeles, California in the matter of *Anastasia Popova v. Ilia Zavialov*, Case No. BD 588375.

7. Defendant, Aaron Abromovitz ("Mr. Abromovitz") is an associate in the law firm of Trope and Trope, located in Los Angeles, California who are the attorneys representing Anastasia in the divorce action, listed as follows, Superior Court of the State of California, For the County of Los Angeles, California in the matter of *Anastasia Popova v. Ilia Zavialov*, Case No. BD 588375.

8. Defendant, Stephen Bills ("Mr. Bills") is a partner in the law firm of Defendant, Philpott, Bills, Stoll & Meeks, LLP ("Philpott, Bills") located in Encino, California and a resident of California, and has been appointed as a receiver by the Superior Court of the State of California, For the County of Los Angeles, California in the matter of *Anastasia Popova v. Ilia Zavialov*, Case No. BD 588375.

9. Defendant, Robert E. Willett ("Mr. Willett") is a Judge of the Los Angeles County Superior Court in California and the presiding Judge in the matter of *Anastasia Popova v. Ilia Zavialov*, Case No. BD 588375.

10. Defendant, Maren E. Nelson ("Ms. Nelson") is a Judge of the Los Angeles County Superior Court in California and presiding over some aspects in the matter of *Anastasia Popova v. Ilia Zavialov*, Case No. BD 588375.

11. Defendant, Edmund G. Brown, Jr., ("Governor Brown") is the governor of the State of California.

12. Defendant, David S. Wesley ("Mr. Wesley") is the presiding Judge of the Los Angeles County Superior Court in California.

13. Defendant, Sherri R. Carter ("Ms. Carter") is the Executive Officer/Clerk of the Los Angeles County Superior Court.

14. Defendant Andrew Christian Schmitt ("Mr. Schmitt") is a resident of Portland, Oregon and shareholder, director, President, and Secretary of Parthenon Software Group, Inc. ("Parthenon"), located in Portland, Oregon.

15. Defendant, David E. Blumenthal, CPA ("Mr. Blumenthal") is a senior partner with Defendant, Gursey, Schneider and Co. LLC ("Gursey"), located in Los Angeles, California, who have engaged in incompetent and fraudulent accounting that has damaged Ilia as further set forth below.

16. Defendant, Jeffrey Wilens ("Mr. Wilens") is an individual and resident of Los Angeles, California, who has provided accounting practices that have damaged Ilia as further set forth below and provided advice to Anastasia that has damaged Ilia as further set forth below.

17. Ilia and Anastasia were married in Bristow, Virginia on or about May 1, 2003.

18. Ilia and Anastasia are the parents of a minor child, A.Z., who was born on July 17, 2011.

19. The matter of *Anastasia Popova v. Ilia Zavialov*, Case No. BD 588375 is a Petition For Dissolution, that was filed by Anastasia on September 6, 2013 by her attorneys Trope and Trope.

20. Anastasia has dual citizenship in Russian and the U.S.A. and has told Ilia that she will take the minor child, A.Z. to another state and that he will never see him again.

21. Prior to the Petition For Dissolution being filed, Ilia shared a very close and loving relationship with his son, the minor child, A.Z. and had only been away from him very briefly.

22. Once the Petition For Dissolution was filed, Anastasia and her attorneys Trope and Trope immediately began a campaign to remove the minor child, A.Z. and that included the filing of ExParte motions for custody, which included false and defamatory statements that were placed into the court file as public records and broadcast to other third parties, including child care providers, babysitters, medical doctors and therapists.

23. The minor child, A.Z. suffers from a medical disorder that requires daily treatments of Vitamin B and Calcium to be administered. Additionally, the minor child, A.Z. has significant delays in gross motor skills and was unable to walk unassisted until he was 19 months old.

24. Examples of these false and defamatory statements are that Ilia has caused his son, the minor child, A.Z. to be physically injured while he was in his care, that Ilia has not properly fed his son, the minor child, A.Z. and that Ilia has been negligent in his care of his son, the minor child, A.Z.

25. The end result is that Ilia is only able to spend time with his son, the minor child, A.Z. in the presence of a supervised minoring service, which costs Ilia around $1,600 per day, when the care for the babysitter and nurse is added in.

26. Ilia has also been stripped of all over night visitation with his son, the minor child, A.Z.

27. This despite the fact that Ilia has for the majority of his visits with his son, the minor child, A.Z. had present a babysitter and a nurse to administer medications.

28. Furthermore, Mr. Willett has allowed Anastasia and her attorneys, Trope and Trope to prevail on all issues related to child custody pertaining to the minor child, A.Z., despite the minor child, A.Z., having sustained significant scrapes and cuts while in Anastasia's care.

29.     Mr. Willett has also not given any weight to testimony from witnesses in favor of Ilia, such as a nurse, who testified as to the strong bond that Ilia has with his son, the minor child, A.Z. and how that bond may be damaged by the ongoing tactics of Anastasia and her attorneys, Trope and Trope.

30.     Mr. Willett has also not given any weight to testimony from Ilia and declarations from Ilia regarding his ability to care for his son, the minor child, A.Z. and regarding the steps that are taken to ensure his safety and medical care, while he is in the care of Ilia.

31.     All of the actions that have been taken towards Ilia have also been done in conjunction with actions that have been taken towards a business venture of Ilia, with the ultimate goal being to wrest control of the business venture away from Ilia and use the custody of the minor child, A.Z. as a bargaining tool.

32.     In 2003, Ilia and Anastasia conceived and put into operation a general partnership under the name of Dream Marriage, initially as an unincorporated entity. This business consisted of an international dating service involving a website format and specializing in the matching and introductions of eligible Russian and Ukrainian women for dating and potential marriage.

33.     On November 29, 2006, Ilia and Anastasia incorporated Dream Marriage as a domestic for-profit Nevada corporation.

34.     From and after 2003, Ilia and Anastasia jointly devoted substantial time, energy, money, property expenses and resources to the development and expansion of Dream Marriage.

35.     Revenue from Dream Marriage comes primary from online user payments through major credit cards and Paypal. That business income is in turn deposited into business bank accounts. Both Ilia and Anastasia are signatories to those bank accounts and under standard accounting principles, gross revenues are disbursed for business purposes, including website expenses, marketing, advertising, employee salaries and benefits, subcontractor expenses,

vendors, rent, utilities, office expenses, repairs and maintenance, licenses, supplies, commissions, travel and entertainment, insurance, legal and accounting and international cooperates known as agencies.

36. Timely payment of business expenses is necessary for the continued maintenance and promotion of the business.

37. Effective January 1, 2010, Ilia became the exclusive manager of Dream Marriage pursuant to a written Management Services Agreement, which granted Ilia the exercise of all management powers over Dream Marriage.

38. Additionally, at all times mentioned herein, Ilia was the shareholder, director, and President of Dream Marriage.

39. Due to the hard work devoted to the business by Ilia and Anastasia, Dream Marriage became a profitable business venture and has experience net profits for the fiscal years 2008, 2009, 2010, 2011, 2012 and 2013.

40. Indeed, it was the intention of Ilia and Anastasia to expand the business into the Latin dating market, the Asian dating market and the African dating market.

41. Beginning in approximately mid to late 2009, Ilia and Anastasia began to experience martial differences and in 2013, Anastasia decided that she wished to end the marriage and immediately embarked on a scheme that would allow her to file a petition for dissolution of marriage and she immediately began to take steps to seize control of Dream Marriage and its finances, to the exclusion of Ilia.

42. The actions of Anastasia since August of 2013, up until the present include: 1) Take action to gain sole management, decision making, and control of the functions of Dream Marriage, 2) Changing the login for the Paypal account of Dream Marriage and diverting all accounts receivable from the jointly accessible business accounts to a non-distributing status or

to accounts only controlled by Defendant, 3) Failing to adequately disperse the majority of funds held in the Paypal account of Dream Marriage into various business accounts, 4) Failing to adequately and timely pay many of the important business debts and expenses for ongoing operations in the ordinary course of business, 5) Failing to secure consent and approval from other shareholders, officers, and directors as to decisions made on behalf of the corporation, 6) Failing to give advance notification/disclosure or the holding of meetings as to shareholders, officers, and directors regarding decisions made of behalf of the corporation, 7) Excluding Plaintiff from his rightful operation, participation, management, and other duties as an officer, director and shareholder, 8) Preventing Plaintiff from supervising, directing, or managing employees and independent contractors, 9) Failing to adequately maintain corporate records, 10) Failing to pay ongoing insurance premiums, 11) Failing to pay ongoing tax obligations and 12) Removing funds of Dream Marriage from bank accounts at Wells Fargo and Bank of America.

43.     On or about September 6, 2013, Anastasia as Petitioner filed a Petition For Dissolution of Marriage in California.

44.     Trope and Trope have been the attorneys for Anastasia since the inception of the Petition For Dissolution of Marriage in California.

45.     Mr. Bills has been appointed as a received for Dream Marriage and has ordered the removal of employees of Dream Marriage, made decisions regarding Dream Marriage that are overly favorable to Anastasia, refused to allow Ilia to have proper input into Dream Marriage, and taken steps designed to force Ilia to cede control of Dream Marriage to Anastasia.

46.     Additionally, when Ilia has made payments for credit cards and related business expenses, Mr. Bills with the assistance, supervision and using resources and fraudulent accounting methods from Philpott, Bills and Mr. Blumenthal and Gursey has demanded that Ilia provide onerous and voluminous documentation to support each payment as a business expense.

47.     Mr. Bills with the assistance, supervision and using resources and fraudulent accounting methods from Philpott, Bills and Mr. Blumenthal and Gursey has also sought to force Ilia to sign an engagement letter, which has been approved by Mr. Trope, Mr. Ellis, Mr. Dunlap, Mr. Abromovitz and Trope and Trope and which contains terms and conditions outside of the scope of the Order appointed him to the role of receiver in the case of Superior Court of the State of California, For the County of Los Angeles, California in the matter of *Anastasia Popova v. Ilia Zavialov*, Case No. BD 588375.

48.     Over the course of the last year, Anastasia, Mr. Trope, Mr. Ellis, Mr. Dunlap, Mr. Abromovitz, Trope and Trope, Mr. Bills, Philpott, Bills, Mr. Willett, Ms. Nelson, Governor Brown, Mr. Wesley, Ms. Carter, Mr. Schmitt,, Mr. Blumenthal, Gursey and Mr. Wilens ("RICO Defendants") as co-conspirators have sought to extort, defraud and otherwise tortuously injure Ilia and Dream Marriage by means of a plan they conceived and carried out under the guise of the litigation in the case of Superior Court of the State of California, For the County of Los Angeles, California in the matter of *Anastasia Popova v. Ilia Zavialov*, Case No. BD 588375.

49.     The enterprise's ultimate aim of the RICO Defendants is to create enough pressure on Ilia to force him to cede control of Dream Marriage over to Anastasia, and to in the alternative deplete business assets and bankrupt the business, and if Ilia does not acquiescence in these goals, to use the threat of taking his son, the minor child, A.Z. away from him under the guise of the litigation in the case of Superior Court of the State of California, For the County of Los Angeles, California in the matter of *Anastasia Popova v. Ilia Zavialov*, Case No. BD 588375

50.     The RICO Defendants have additionally organized a group of people to form as shareholders and attempt to take over Dream Marriage and force Ilia out of having any control over Dream Marriage.

51.     Specifically, during the course of the past year, under the guise of litigating the case of Superior Court of the State of California, For the County of Los Angeles, California in the matter of *Anastasia Popova v. Ilia Zavialov*, Case No. BD 588375, Mr. Dunlap told Ilia that in order to settle the matter Anastasia would take, "Everything you have, 100%."

52.     The RICO Defendants have sought to inflict maximum damage to Ilia and to put personal psychological pressure on top executives of Dream Marriage, such as Brad Goodman ("Mr. Goodman"), a long time employee of Dream Marriage who at the direction of Mr. Bills ad with the assistance of Mr. Wilens was fired.

53.     Ilia was never consulted prior to Mr. Bills firing Mr. Goodman and based on information and believe it was under the direction of the other RICO Defendants and with their support and acquiescence that Mr. Bills proceeded to fire Mr. Goodman.

54.     As it relates to Mr. Schmitt, Dream Marriage contacted Defendant Schmitt, as the owner and President of Parthenon, to perform systems administration, software development, coding, security, marketing, search engine optimization ("SEO") and other computer and networking services for the site, www.dream-marriage.com, an international dating site.

55.     Mr. Schmitt and Parthenon were also tasked with ensuring that the site, www.dream-marriage.com and other websites related to Dream Marriage were safe and secure for customers, free from viruses and bugs, preventing hacking and security breaches, preventing the sites from "going down", and responding to any technology emergencies.

56.     In performing its duties, Mr. Schmitt and Parthenon were given access to highly confidential and proprietary information, including login credentials, passwords, usernames/IDs, PINS, PayPal access information, coding, and other private company information.

57.     This included, but was not limited to access to the Dream Marriage PayPal account.

58.     In furtherance of the plan to force Ilia out of having any control over Dream Marriage, Mr. Schmitt and Parthenon have blocked and refused to give Ilia access to customer data, blocked and refused to give Ilia access to computer servers for Dream Marriage and blocked and refused to give Ilia access to e-mail accounts for Dream Marriage.

59.     Mr. Schmitt and Parthenon have then provided that information that Anastasia, who has then used her access to that information to work in conspiracy and concert with the other RICO Defendants in furtherance of the plan to force Ilia out of having any control over Dream Marriage, and to create enough pressure on Ilia to force him to cede control of Dream Marriage over to Anastasia, and to in the alternative deplete business assets and bankrupt the business.

## JURISDICTION AND VENUE

60.     This Court has original jurisdiction over the claims asserted in this action pursuant to 28 U.S.C. §1332(a)(1) as the Plaintiff and Defendants are citizens of different states. The amount in controversy, exclusive of interest and costs, exceeds the jurisdictional amount set forth in 28 U.S.C. §1332(a).

61.     The Court has original jurisdiction over the claims asserted in this action pursuant to 28 U.S.C. §1331, 28 U.S.C. §1343, 28 U.S.C. §1658 and 18 U.S.C. §1964 (b), (c) and (d).

62.     Venue is proper in the Western District of Washington pursuant to 28 U.S.C. §1391(a)(2) as a substantial part of the events that give rise to Plaintiff's claims asserted in this action occurred in this judicial district.

## COUNT I

### (As to all Defendants)

### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

63. Ilia, the Plaintiff re-alleges and incorporates by reference the allegations in the above paragraphs, as if fully set forth herein.

64. The Defendants' unlawful conduct towards Ilia, the Plaintiff was careless, unreasonable, intentional and was a proximate cause of the infliction of severe mental anguish and emotional distress suffered by Ilia, the Plaintiff, for which he is entitled to recover damages in an amount to be established at the time of trial.

## COUNT II

### (As to all Defendants)

### DEFAMATION

65. Ilia, the Plaintiff re-alleges and incorporates by reference the allegations in the above paragraphs, as if fully set forth herein.

66. The Defendants' negligently and/or willfully and maliciously made defamatory statements about Ilia, the Plaintiff and broadcast those to third parties and as a proximate cause, Ilia the Plaintiff has suffered personal injury, including injury to his reputation for which he is entitled to recover damages in an amount to be established at the time of trial.

## COUNT III

### (As to RICO Defendants)

### VIOLATION OF RICO, 18 U.S.C. §1962(b) and (c)

67. Ilia, the Plaintiff re-alleges and incorporates by referenced the allegations in the above paragraphs, as if fully set forth herein.

68. At all relevant times, the RICO Defendants are a person within the meaning of 18 U.S.C. §§1961(3) and 1962 (b) and (c).

69. The RICO Defendants and their co-conspirators are a group of persons associated together in fact for the common purpose of carrying out an ongoing criminal enterprise, as described in the foregoing paragraphs of the Complaint; namely through the guise of litigation in the case of Superior Court of the State of California, For the County of Los Angeles, California in the matter of *Anastasia Popova v. Ilia Zavialov*, Case No. BD 588375, to force Ilia out of having any control over Dream Marriage, to create enough pressure on Ilia to force him to cede control of Dream Marriage over to Anastasia, and to in the alternative deplete business assets and bankrupt the business.

70. The RICO Defendants and their co-conspirators constitute an enterprise within the meaning of 18 U.S.C. §1962(c) and at all times relevant, said enterprise was engaged in, and its activities affected interstate and foreign commerce within the meaning of 18 U.S.C. §1962(c).

71. The RICO Defendants conducted or participated, directly or indirectly, in the conduct, management, or operation of the enterprise's affairs through a "pattern of racketeering activity" within the meaning of and in violation of 18 U.S.C. §1961(5) and in violation of 18 U.S.C. §1962(c).

72. The RICO Defendants through a "pattern of racketeering activity" engaged in the collection of unlawful debt and acquired or maintained, directly or indirectly, an interest in or control of an enterprise, the activities of which affected interstate or foreign commerce within the meaning of and in violation of 18 U.S.C. §1961 (5) and 18 U.S.C. §1962(b).

73. As a direct and proximate result of Defendants' actions, Ilia has suffered damages in an amount to be proven at trial.

74.	Pursuant to 18 U.S.C. §1964(c), Ilia is entitled to recover treble damages plus costs and attorneys' fees from the RICO Defendants.

75.	Ilia is further entitled to, and should be awarded, a preliminary and permanent injunction that enjoins Defendants, their assignees and anyone else acting in concert with them from continuing their course of conduct.

### COUNT IV

### (As to RICO Defendants)

### VIOLATION OF RICO, 18 U.S.C. §1962(d)

76.	Ilia, the Plaintiff re-alleges and incorporates by referenced the allegations in the above paragraphs, as if fully set forth herein.

77.	The RICO Defendants have unlawfully, knowingly and willfully combined, conspired, confederated and agreed together and with others to violate 18 U.S.C. §1962(b) and (c) as described above, in violation of 18 U.S.C. §1962(d).

78.	Upon information and belief, the RICO Defendants knew that they were engaged in a conspiracy to commit the predicate acts, and they knew that the predicate acts were part of such racketeering activity, and the participation and agreement of each of them was necessary to allow the commission of this pattern of racketeering activity. This conduct constitutes a conspiracy to violate 18 U.S.C. §1962(b) and (c), in violation of 18 U.S.C. §1962(d).

79.	As a direct and proximate result of Defendants' actions, Ilia has suffered damages in an amount to be proven at trial.

80.	Pursuant to 18 U.S.C. §1964(c), Ilia is entitled to recover treble damages plus costs and attorneys' fees from the RICO Defendants.

81.     Ilia is further entitled to, and should be awarded, a preliminary and permanent injunction that enjoins Defendants, their assignees and anyone else acting in concert with them from continuing their course of conduct.

## COUNT V

### (As to Defendants, Mr. Willett, Ms. Nelson, Governor Brown, State of California, Los Angeles County Superior Court, Mr. Wesley and Ms. Carter)

### VIOLATION OF CIVIL RIGHTS – 42 U.S.C. §1983

82.     Ilia, the Plaintiff re-alleges and incorporates by reference the allegations in the above paragraphs, as if fully set forth herein.

83.     The actions of Mr. Willett, Ms. Nelson, Governor Brown, State of California, Los Angeles County Superior Court, Mr. Wesley and Ms. Carter were done under color of state law and are in violation of Ilia's right to Due Process as guaranteed by the Fourteenth Amendment of the United States Constitution and in violation of the implicit guarantee of the Fifth Amendment of the United States Constitution that each person receive Equal Protection of the laws.

84.     Mr. Willett, Ms. Nelson, Governor Brown, State of California, Los Angeles County Superior Court, Mr. Wesley and Ms. Carter have allowed the other RICO Defendants named in the foregoing paragraphs to deprive Ilia of his property rights in Dream Marriage and have not allowed Ilia throughout the rulings in the case of Superior Court of the State of California, For the County of Los Angeles, California in the matter of <u>Anastasia Popova v. Ilia Zavialov, Case No. BD 588375</u> to have the Due Process that is afforded him by the Fourteenth Amendment of the United States Constitution and the Equal Protection of the laws that he is guaranteed under the Fifth Amendment of the United States Constitution.

85.     As a direct and proximate result of Defendant's actions, Ilia has suffered damages in an amount to be proven at trial.

## COUNT VI

## INJUNCTIVE RELIEF

86.     Ilia, the Plaintiff re-alleges and incorporates by reference the allegations in the above paragraphs, as if fully set forth herein.

87.     Pursuant to Federal Rule of Civil Procedure 65, Ilia can seek injunctive relief.

88.     Ilia, the Plaintiff is likely to succeed on the merits of its claims against the Defendants based on Infliction of Emotional Distress, Defamation, RIOC Violations and Civil Rights Violations and seeking Injunctive Relief Defendants for RICO Violations, Defamation, Gross Negligence, Negligence and Civil Rights violations.

89.     To the extent that the balance of hardships is weighed in this matter, the Defendants will not suffer substantial harm if the Plaintiff's request is granted.

90.     The balance of hardships weighs in Plaintiff's favor.

91.     Plaintiff will suffer irreparable and imminent harm if requested injunctive relief is not granted.

92.     Plaintiff has no other adequate remedy at law.

93.     There is no adverse public interest that will result from the granting of injunctive relief in this matter.

## REQUEST FOR RELIEF

WHEREFORE, Ilia, the Plaintiff demands a trial by jury and a Judgment in favor of the Plaintiff as follows:

**On the First, Second and Fifth Counts for Relief:**

1. An award of damages in an amount to be established at trial;

2. An award of prejudgment interest on such damages;

3. An award of attorneys' fees, costs and other expenses recoverable in connection with this proceeding; and

4. Such other and further relief as the Court may deem just, equitable or proper.
5.

**On the Third and Fourth Counts for Relief:**

6. For general damages according to proof at trial, trebled according to statute, 18 U.S.C. §1964(c);

7. For prejudgment interest according to statute; and

8. For Ilia's reasonable attorneys' fees and costs according to statute, 18 U.S.C. §1964(c).

**On the Sixth Count for Relief:**

9. For equitable relief as appropriate pursuant to applicable law, including but not limited to issuing a temporary restraining order, a preliminary injunction and a permanent injunction that bars Defendant, their assignees and anyone else acting in concert with them from continuing their course of conduct.

10. An award of attorneys' fees, costs and other expenses recoverable in connection with this proceeding; and

11. Such other and further relief as the Court may deem just, equitable or proper.

RESPECTFULLY SUBMITTED this ___ day of September, 2014

By: _____
Ilia Zavialov